IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BILLY RAY TRATREE, }<br>          Plaintiff(s)           }<br>                                               }<br>v.                                            }<br>                                               }<br>BP NORTH AMERICAN PIPELINES, INC., }<br>KELLY GLEASON, and ROY BOWDEN, }<br>          Defendant(s)          } | CIVIL ACTION NO. H-03-0954 |

## MEMORANDUM OPINION ORDER

**I. INTRODUCTION**

Pending before the court in this race and age discrimination case are (1) Defendant Kelly Gleason's motion to dismiss (Doc. 51); (2) Plaintiff's motion for leave to file second amended complaint (Doc. 59); and (3) Defendants' motion for summary judgment (Doc. 67). The court ORDERS that Defendants' motion for summary judgment is GRANTED IN PART AND DENIED IN PART; Plaintiff's motion for leave to file second amended complaint is GRANTED; and Defendant Gleason's motion to dismiss is MOOT.

**II. FACTS**

Billy Ray Tratree ("Plaintiff" or "Tratree") began working for Amoco 1978. When Amoco merged with BP, Tratree's employer became BP North American Pipelines Inc. ("BP"). Tratree, an African-American over the age of fifty, worked at BP's North Zulch, Texas, station from 1995 until 2001. Grayson Williams, a younger Caucasian worker, was Tratree's only co-worker. Former[1] defendant Roy Bowden ("Bowden") was Tratree's immediate supervisor. Defendant Kelly Gleason ("Gleason") was the area manager. Tratree was a member of the Oil, Chemical and Atomic Workers International Union.

As a union member, Tratree was a party to its collective bargaining agreement with BP ("the agreement"). The agreement classifies employees according to job title, prescribes how to

---

[1] See, Notice of Dismissal of Claims against Roy Bowden Only (Doc. 62).

determine seniority, and establishes a system of "bumping". See, CBA art. 6, 10 & 12 (Doc. 67 Ex. 7). Bumping is the process whereby an employee whose job is eliminated is given the right to bump, or replace, any less senior employee working in an equivalent or less skilled position. Id. art. 10.  Employees have five days from the time they are notified their employment will be discontinued to exercise their bumping rights. Id.  The agreement sets rates of pay and bumping rights according to an employee's classification. Id. art. 9.  As part of the agreement, changes were made to the classification of jobs within BP. Employees were allowed to change from their "old" classifications and rates of pay to the "new" classifications and rates of pay.  To change to a "new" designation, employees needed to complete training modules and be checked-off for the new position by a qualified checker – usually the employee's supervisor. Gleason Dep. 135-136. BP's policy was not to allow "old" classifications to bump "new" classifications. Toomer Dep. 82-83; Bumping Guidelines II (Doc. 67 Ex.8).  In this way, employees were encouraged to transfer to "new" classification to preserve their bumping rights. See, Anderson letter (Doc. 67 Ex. 17).

Tratree testified that he completed all the requirements for the Field Specialist III position and all the text requirements for the Field Specialist II position before he was terminated.  Tratree Dep: 61-62. In addition to the text requirements, certification as a Field Specialist II required some minimal hands on training and a "check off."  Tratree has testified that he approached his supervisors several times to receive this training and "check off," but was denied the opportunity to get checked off. Id. at 61.  Tratree learned at the time that Williams, his younger and less senior co-worker, was being trained for the Field Specialist II position. Id.

On September 18, 2001, BP informed Tratree his job was being eliminated because it had decided to shut down that part of the pipeline.  Tratree Dep. 125. At the time, Plaintiff was a Measurement Specialist I ("old" classification) and Williams was already a Field Specialist II ("new" classification).  BP's human resources department provided Tratree with his bumping options, none of which were in North Zulch or its vicinity.   Tratree did not sign the bump sheet during the five day period, and was terminated on September 25, 2001.

III. LAW

A. Summary Judgment

The movant seeking a federal summary judgment initially must inform the court of the basis for his motion and point out those portions of the pleadings, depositions, answers to interrogatories, and admissions on file that demonstrate the absence of a genuine issue of material fact and show that he is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant need not negate the opposing party's claims nor produce evidence showing an absence of a genuine factual issue, but may rely on the absence of evidence to support essential elements of opposing party's claims. International Assoc. of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co., 812 F.2d 219, 222 (5th Cir. 1987). The burden then shifts to the non-movant to set forth specific facts and competent summary judgment evidence to raise a genuine issue of material fact on each essential element of any claim on which he bears the burden of proof at trial. Fed. R. Civ. P. 56(c). The substantive law governing the suit identifies the essential elements of the claims at issue and therefore indicates which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party may not rest on mere allegations or denials in its pleadings, but must produce affirmative evidence and specific facts. Anderson, 477 U.S. at 256-57. He meets this burden only if he shows that "a reasonable jury could return a verdict for the non-moving party." Id. at 254. A mere scintilla of evidence will not preclude granting of a motion for summary judgment. Id. at 252.

All reasonable inferences must be drawn in favor of the non-moving party. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574. 587-88 (1986), citing United States v. Diebold, 369 U.S. 654, 655 (1962). Once the burden of proof has shifted to the non-movant, he "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. Instead he must produce evidence upon which a jury could reasonably base a verdict in his favor. Anderson, 477 U.S. at 249. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If

the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id., 477 U.S. at 249-50. Moreover the non-movant must "go beyond the pleadings and by her own affidavits or by depositions, answers to interrogatories and admissions on file, designate specific facts that show there is a genuine issue for trial." Webb v. Cardiothoracic Surgery Assoc. of North Texas, P.A., 139 F.3d 532, 536 (5th Cir. 1998). Unsubstantiated and subjective beliefs and conclusory allegations and opinions are not competent summary judgment evidence. Grimes v. Texas Dept. of Mental Health and Mental Retardation, 102 F.3d 137, 139-40 (5th Cir. 1996); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir.), cert. denied, 513 U.S. 871 (1994); Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir.), cert. denied, 506 U.S. 825 (1992). Nor are pleadings summary judgment evidence. Wallace v. Texas Tech University, 80 F.3d 1042, 1046 (5th Cir. 1996), citing Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(*en banc*). The non-movant cannot discharge his burden by offering vague allegations and legal conclusions. Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992); Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889 (1990). Nor is the district court required by Rule 56 to sift through the record in search of evidence to support a party's opposition to summary judgment. Ragas v. Tennessee Gas Pipeline Co., 136 F.3d 455, 458 (5th Cir. 1998), citing Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915-16 & n.7 (5th Cir.), cert. denied, 506 U.S. 832 (1992).

**B. Governing Legal Standard for Discrimination Claims under the ADEA, Title VII and Section 1981.**

The same standard of proof applies to claims under the ADEA, Title VII and Section 1981. Roberson v. Alltel Info. Servs., 373 F.3d 647, 651 (5th Cir. 2004). A plaintiff states a *prima facie* case of discriminatory discharge under the ADEA if he shows that he was over forty years old, qualified for his job, and discharged because of his age. Rachid v. Jack in the Box, Inc., 376 F.3d 305, 311 (5th Cir. 2004). If the claim is based on a failure to promote, then plaintiff must show he was over forty; qualified for the position sought; not promoted; and that the position was filled by someone younger or the failure to promote was due to his age. Bennett v. Total Minatome Corp., 138 F.3d 1053, 1060 (5th Cir. 1998). The discriminatory failure to train, in and of itself, is not cognizable under the ADEA.

A *prima facie* case of race discrimination under Title VII or Section 1981 consists of evidence that: (1) plaintiff is a member of a protected class, (2) was qualified for the position, (3) suffered an adverse employment action and (4) has been replaced by someone outside the protected class. Pegram v. Honeywell, Inc., 361 F.3d 272, 281 (5th Cir. 2004). Satisfying these four elements creates a presumption of discrimination, Shackelford, 190 F.3d at 404, and "only a minimal showing is necessary" to do so. Bauer v. Albemarle, 169 F.3d 966, 967 (5th Cir. 1999); see also, Nichols v. Loral Cought Sys. Corp., 81 F.3d 38, 41 (5th Cir. 1996) ("to establish a *prima facie* case, plaintiff need only make a very minimal showing"). The discriminatory failure to train is cognizable under Title VII. 42 U.S.C. 2000e-2(d); See also, Wright v. National Archives and Records Service, 609 F.2d 702 (4th Cir. 1979). Plaintiff must show that the failure to train had a tendency to affect an plaintiff's employment status or benefits. Shackelford v. DeLoitte & Touche, LLP, 190 F.3d 398, 407 (5th Cir. 1999).

A plaintiff who succeeds in making a *prima facie* case of age or race discrimination shifts the burden to the defendant to articulate some legitimate reason for the adverse employment decision. McDonnell-Douglas v. Green, 411 U.S. 792, 802 (1973) (Title VII); Machinchick v. PB Power, Inc., 398 F.3d 345, 350 (5th Cir. 2005) (ADEA). If defendant is successful, plaintiff must introduce evidence tending to show either that the articulated reason is false *or* that the motivating factor for the decision was plaintiff's protected status. Keelan v. Majesco Software, Inc., 407 F.3d 332 (5th Cir. 2005) (Race); Machinchick, 398 F.3d at 352.

**C. Legal Standard Governing Retaliation claims under Section 1981, Title VII and the ADEA.**

To survive summary judgment plaintiff must make a *prima facie* showing: (1) that the plaintiff engaged in activity protected by Title VII, Section 1981 or the ADEA, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action. Banks v. East Baton Rouge Parish Sch. Bd., 320 F.3d 570, 575 (5th Cir. 2003). A "protected activity" is "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." Ackel v. National Communications Inc., 339 F.3d 376, 385 (5th Cir. 2003)

(quoting Green v. Administrators of the Tulane Educational Fund, 284 F.3d 642, 657 (5th Cir. 2002). At the summary judgment stage, to satisfy the causation element the plaintiff "must produce some evidence of a causal link between the protected activity and the adverse employment action." Ackel, 339 F.3d at 385 (citing Fierros v. Tex. Dep't of Health, 274 F.3d 187, 191 (5th Cir. 2001)). In determining whether plaintiff's protected activity caused the adverse employment action the "focus is on the final decision maker." Id. (quoting Gee v. Principi, 289 F.3d 342, 346 (5th Cir. 2002)).

## IV. APPLICATION OF LAW TO THE FACTS

### A. Plaintiff's Age Discrimination Claims

Tratree has stated a *prima facie* case of age discrimination – he was within the protected class, qualified,[2] and fired.  BP has articulated a non-discriminatory reason for its decision to terminate Tratree; namely, that he willfully failed to sign the bump sheet. Mot. Summ. J. at 1. The question presented is whether Tratree has produced sufficient evidence that age was the motivating factor in BP's decision. The court finds that he has.

Tratree has produced evidence, including depositions, tape recordings, and his own statement, that raise a material question about BP's motives. First, BP's area manager testified that, at a meeting in 2001, Lee Edwards, president of BP Amoco, said that, "in effect BP discriminates against age." Gleason Dep: 18:8-17, 47:21 - 49:2.[3]  Second, Plaintiff has introduced evidence that the North Zulch/Mexia line remained in operation for three years after his termination. See Parker Dep. 40-41. Third, management believed Tratree would retire when he turned fifty, Tr. of Audio-taped phone call at 3 (Doc. 68 Ex.13), and he was fired three months before that date. Finally, Tratree has testified that, even though he completed training to be classified as a Field Specialist II, he was denied his final check-off. Tratree Dep: 61-62, 261, 278,

---

[2] Q. Are you aware of any complaints concerning the performance of any job or work that Billy Ray Tratree did while he as employed at either Amoco or BP?
A. No, I'm not.  Toomer Dep. 40:9-12

[3] BP urges the court to disregard this evidence as hearsay or under the "stray remarks doctrine." Mot. Summ. J. at 27 (citing Palasota v. Haggar Clothing Co., 342 F.3d 569, 576 (5th Cir. 2003)). The statement is non-hearsay under Rule 801(d)(2) (Admission by a party-opponent).  Moreover, the comment is not a "stray remark" because (1) it related to the employment practices of BP; (2) it was proximate in time to Tratree's termination; and (3) it was made by an individual with authority.

383-84, 395. A jury would be entitled to infer from these facts that BP was motivated by Tratree's age when it terminated his employment.

Tratree has stated a claim for retaliation under the ADEA. He has testified and introduced evidence that he complained to management about discrimination in the training process. Bowden Dep. 93-94; Tr. of audio-taped phone call at 11; Tratree Dep. 61-62, 261, 278, 383-84, 395. He has also introduced evidence that BP originally planned on waiting to eliminate his position until after he reached retirement age and then changed its mind. Toomer Dep. 130, 132-33. A jury could infer that this sudden choice was prompted by discriminatory or retaliatory animus.

Although BP's failure to train and certify Tratree for the Field Specialist II position is evidence of BP's impermissible motive in terminating him, it is not cognizable as an independent claim. Unlike Title VII, the ADEA does not prohibit discrimination in training. Plaintiff's failure to promote claim is likewise doomed. By his own admission he was not certified as a Field Specialist II. Qualification for the position sought is part of the prima facie case requirement. Because Tratree cannot show he was qualified for the Field Specialist II position, he fails to state a claim for failure to promote under the ADEA.

**B. Plaintiff's Race Discrimination Claims Under Title VII and Section 1981**

Plaintiff's claims of racial discrimination do not fair as well as his ADEA claims. Tratree has not produced evidence that race played a role, much less was a motivating factor, in the decision to eliminate his position and fire him. Therefore, the court grants BP's motion with respect to Tratree's Title VII and Section 1981 discriminatory discharge and retaliatory discharge claims. Similarly, Plaintiff's Section 1981 claim against Defendant Kelly Gleason is unsupported by any evidence of racial motivation.

**V. CONCLUSION**

For the aforementioned reasons, the court ORDERS as follows:

1. Defendant BP's motion for summary judgment is GRANTED on Plaintiff's Title VII and Section 1981 claims.

-8-

2. Defendant BP's motion for summary judgment is GRANTED on Plaintiff's ADEA claim for failure to train and promote.

3. Defendant BP's motion for summary judgment is DENIED on Plaintiff's ADEA claim for discriminatory discharge and retaliation.

4. Defendant Gleason's motion for summary judgment is GRANTED.

5. Plaintiff's motion for leave to file second amended complaint is GRANTED.

6. Defendant Gleason's motion to dismiss is MOOT.

7. The case is REFERRED to United States Magistrate Judge Frances Stacy for a scheduling conference to reinstate this case on the court's trial calender.

**SIGNED** at Houston, Texas, this 9th day of March, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE