IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| BILLY RAY TRATREE, } | | |
| Plaintiff(s) } | | |
| } | | |
| v. } | | CIVIL ACTION NO. H-03-0954 |
| } | | |
| BP NORTH AMERICAN PIPELINES, INC., } | | |
| KELLY GLEASON, and ROY BOWDEN, } | | |
| Defendant(s) } | | |

**MEMORANDUM OPINION**

After four days of trial, at the close of Plaintiff's case, the court granted Defendant BP North American Pipelines's motion for directed verdict. The following is a statement of the court's reasons.

I. Facts and Procedural Posture

Plaintiff Billy Ray Tratree worked for BP North American Pipelines ("BP") and its predecessor from 1978 until 2001. In 2001, Tratree was employed on a section of pipeline running from Mexia to Hufsmith ("the Mexia Line"). Tratree was one of two pipeline workers assigned to the Mexia line. Tratree's coworker was Grayson Williams. Tratree's team leader was Roy Bowden. Bowden reported to the area manager, Kelly Gleason, who was responsible for the majority of east Texas.

As a union member, Tratree was a party to the union's collective bargaining agreement with BP ("the CBA"). The CBA comprehensively governs the relationship between BP and its workers. Under the CBA, a union member whose position is eliminated has the right to take the job of any junior, less qualified, worker. The CBA provides workers with five days to select the position they will take. This process is known as bumping.

In 1995, BP and the union introduced a policy they called "multi-skilling." The core of multi-skilling was introducing a new system of employee classifications. Under the old system of classifications, employees were classified according to their function. Under the new system, employees were trained to perform various functions.

Transferring from an old classification to a new classification was a three step process. First, the transferring employee needed to complete modules of home study; then, coordinate and undergo field training; and, finally, be tested and checked-off by a qualified trainer or supervisor.

In 2001, BP decided to eliminate one of the pipeline worker positions on the Mexia line. Gleason and Bowden both testified that the line had been performing badly and that BP had decided to decommission it.

Tratree was the least qualified employee working on the Mexia line at this time. Despite having received his check-off to become a Field Specialist III (new classification), Tratree had chosen to remain Measurement Specialist I (old classification). Tratree's co-worker, Grayson Williams, in the meantime, had become a Field Specialist II (new classification).

On September 18, 2001, Tratree was informed by BP that his position had been eliminated. Thad Toomer, of Human Resources, issued Tratree his bumping options, which were accompanied by a letter indicating Tratree had five days to make his selection.

Despite attempts by Tratree's supervisors, co-workers, and union brothers to convince him to sign his bumping options, Tratree refused. On September 25, 2001, seven days after Tratree was issued his bump sheet, Richard Hardwick met with Tratree at the Mexia station. Hardwick asked Tratree if he was going to sign his bump sheet. Tratree replied that he would not and that "BP will just have to do what it has to do." Hardwick then informed him that he was terminated. Tratree was forty-nine years old.

After filing a complaint with the EEOC and receiving a right to sue letter, Tratree filed this law suit. Tratree's original complaint states claims for violation of the Age Discrimination in Employment Act, Title VII, and Section 1981.

In an earlier Memorandum and Order (Doc. 72), the court granted BP's motion for summary judgment on Tratree's Title VII and Section 1981 claims. The court denied BP's motion for summary judgment on Tratree's ADEA claims.

II. Law

Judgment as a matter of law is appropriate "[i]f during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a). In other words, a motion for directed verdict should be granted "when there is not a sufficient conflict in substantial evidence to create a jury question." *Travis v. Bd. Of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997) (citing *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 804 (5thCir. 1997). A sufficient conflict exists when there is evidence "of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions." *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1969).

III. Application of law to the facts.

Tratree has failed to introduce sufficient evidence of discrimination or retaliation to allow a reasonable jury to render a verdict in his favor. The evidence Tratree has offered, while inflammatory, is irrelevant to the primary issue in this case: whether age was a motivating factor in BP's employment decisions.

Tratree's retaliation claim fails for the additional reason that Tratree did not present evidence that he engaged in a protected activity.

    A. Evidence of Discrimination

In response to BP's motion for judgement as a matter of law Tratree urged the following evidence: (1) his testimony that a Grayson Williams received more training than he received; (2) Gleason's testimony that the President of BP North America Pipelines, Inc., made age-related remarks; and (3) Tratree's testimony that his bumping sheet was incorrect. None of this evidence, taken alone or together, would support a jury verdict in Tratree's favor.

Evidence that Williams received more training than Tratree is not evidence that BP was motivated by Tratree's age when it eliminated his job and fired him. Williams was forty-three years old at the time, well within the protected class. Also, job training was coordinated at the local level, while the decision to eliminate Tratree's job was taken at the regional level. Any evidence

-3-

of a disparity in training is therefore irrelevant to the ultimate issue of whether Kelly Gleason, as area manager, and Thad Toomer, as human resources representative, where motivated by Tratree's age.

Lee Edwards's age-related remarks are not sufficient evidence of age discrimination to support a jury's verdict. First, Edwards's remarks were made seven months before Tratree was fired. Second, the remarks did not concern Tratree's position or employment, but were directed at participants at a meeting of pipeline managers. Finally, there is no evidence Edward's played any part in the decision to eliminate Tratree's position or to fire him. Gleason, the only decision maker who heard Edwards's remarks, testified that he was shocked and did not practice age discrimination himself. Toomer, the other decision maker, did not attend the meeting where the remarks were made, and testified to BP's policy against age discrimination.

Finally, Tratree's subjective belief that his bumping sheet did not reflect all available jobs is not evidence of discrimination. Toomer testified that Tratree's bumping sheet was produced in accordance with company policy at the time and reflected all available jobs. Tratree's subjective belief to the contrary is not relevant. To raise an inference that BP had ulterior motives when it issued the bump sheet, Tratree would have had to introduce evidence that the sheet was inaccurate. He has not done so, and, therefore, judgment as a matter of law is appropriate.

B. <u>BP's articulated legitimate reasons are overwhelmingly supported by the evidence.</u>

The evidence presented at trial overwhelmingly supports BP's articulated legitimate reason for eliminating Tratree rather the Williams. Williams, a Field Specialist II, was the more qualified employee and was capable of performing all the necessary work.

The evidence also overwhelmingly supports BP's claim that it decided to terminate Tratree based on his failure to sign his bumping options. The CBA requires employees to sign their bumping options within five days. This time limit exists because eliminating one position can affect many employees as the bumping process unfolds. Even so, BP waited seven days before firing Tratree, and, even then, first tried to convince him to make his bumping selection.

C.  Retaliation

Judgment as a matter of law is appropriate on Tratree's retaliation claim because there is no evidence that Tratree engaged in protected activity under the ADEA. Complaining about unfair treatment without specifying why the treatment is unfair is not a protected activity. *See Harris-Childs v. Medco Health Solutions*, 169 Fed. Appx. 913 (5th Cir. 2006) (finding that plaintiff had failed to show she engaged in a protected activity where she complained of unfair treatment without specifying that her complaint was based on racial or sexual discrimination). Here, Tratree testified that he complained to Roy Bowden, Andre Parker, and Kelly Gleason about unfairness in training, and that he wrote a letter to his union. He did not testify, however, that he complained about age discrimination or discussed it in his letter.

IV. Conclusion

For the foregoing reasons, judgment as a matter of law is warranted on Tratree's claims of age discrimination and retaliation. Final judgment in favor of BP and against Tratree will follow by separate order.

**SIGNED** at Houston, Texas, this 27th day of November, 2006.

_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE