```
                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE SOUTHERN DISTRICT OF TEXAS
                              HOUSTON DIVISION


BILLY RAY TRATREE,                  )
                                    )
         Plaintiff,                 )
                                    )        CIVIL ACTION
VS.                                 )        NO. H-03-954
                                    )
BP (NORTH AMERICA) PIPELINES,       )        October 24, 2006
INC., KELLY GLEASON and             )
ROY BOWDEN,                         )
                                    )
         Defendants.                )
```

TRIAL BEFORE THE HONORABLE MELINDA HARMON
AND A JURY

VOLUME 2
PAGES 119 - 274

| | |
|---|---|
| For the Plaintiff: | Mr. Carlos R. Soltero<br>McGinnis, Lochridge & Kilgore, LLP<br>600 Congress Avenue, Suite 2100<br>Austin, Texas   78701 |
| | Ms. Ellen H. Spalding<br>McGinnis, Lochridge & Kilgore, LLP<br>1221 McKinney Street, Suite 3200<br>Houston, Texas   77010 |
| For the Defendants: | Ms. Monica F. Oathout<br>Mr. David E. Finck<br>Mr. Todd M. Foss<br>Schwartz, Junell, Greenberg &<br>  Oathout, LLP<br>909 Fannin, Suite 2700<br>Houston, Texas   77010 |


DEFENDANT'S EXHIBIT 9

```
 1                              Ms. Christine M. Stevenson
                                BP America, Inc.
 2                              P.O. Box 3092
                                Houston, Texas   77079
 3
       Court Reporter:          Bruce Slavin
 4                              Registered Professional Reporter

 5     Proceedings reported by mechanical stenography and produced
       by computer-aided transcription.
 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

|    |    |
|----|----|
| 1  | annuities in the amount of $75,000. |
| 2  | A.  I understand distribution is I sold some stock.  Is this |
| 3  | what you're asking? |
| 4  | Q.  Okay, sir. |
| 5  | A.  Okay.  I sold some stock. |
| 6  | Q.  Okay.  Exhibit 13, Page 16.  And, again, sir, in the |
| 7  | Year 2005 you reported on your federal income tax return |
| 8  | that you had received pension and annuities in the amount of |
| 9  | $81,250.  Isn't that correct? |
| 10 | A.  So, I sold some more stock. |
| 11 | Q.  Okay.  In which you were a 100 percent vested in order |
| 12 | to sell or get that distribution.  Correct? |
| 13 | A.  I don't know. |
| 14 | Q.  Mr. Tratree, did you purchase any type of insurance |
| 15 | after you left BP? |
| 16 | A.  Not that I can think of. |
| 17 | Q.  Okay.  Did you get any type of insurance whatsoever? |
| 18 | A.  No, I didn't. |
| 19 | Q.  Do you have any proof of what the cost of any out-of- |
| 20 | pocket expenses might have been for you or any medical |
| 21 | coverage or other type of coverage you may have received |
| 22 | since you left BP? |
| 23 | MR. SOLTERO:  Objection, Your Honor.  May we |
| 24 | approach on this issue? |
| 25 | THE COURT:  You may. |

| | | |
|---|---|---|
| | 1 | Q. If you got a statement from Fidelity, Mr. Tratree, does |
| | 2 | that refresh your recollection that Fidelity is the company |
| | 3 | that handed your BP retirement plan? |
| | 4 | A. I know that. Yes, ma'am. |
| 11:40 | 5 | Q. Okay. So, if there's a statement from Fidelity, it's |
| | 6 | about your retirement plan, isn't it, sir? |
| | 7 | A. Or my stock plan. |
| | 8 | Q. Sir? |
| | 9 | A. Or my stock plan. |
| 11:40 | 10 | Q. Okay. Was your 401(K) with Fidelity as well? |
| | 11 | A. I don't know offhand. |
| | 12 | Q. Okay, sir. Back to the cost of any insurance. |
| | 13 | You have not incurred any out-of-pocket |
| | 14 | expenses for any insurance, have you, sir? |
| 11:40 | 15 | A. Yes, I have. I'm sorry. Repeat that. I'm sorry. |
| | 16 | Q. I think you told me you haven't gotten any insurance. |
| | 17 | Is that correct? |
| | 18 | A. Yes. That's correct. That's correct. |
| | 19 | Q. So, you haven't incurred any out-of-pocket expenses, |
| 11:40 | 20 | then, in getting insurance because you didn't get any? |
| | 21 | A. That's correct. |
| | 22 | Q. Okay. And do you have any proof, sir, of any out-of- |
| | 23 | pocket expenses whatsoever that you may have incurred for |
| | 24 | things that were covered by insurance when you were with BP |
| 11:40 | 25 | but that were not later covered? |

| | | |
|---|---|---|
| | 1 | A. That's correct. |
| | 2 | Q. Now, in terms of what you were doing during this time |
| | 3 | frame when you were proving meters, tell us all of your |
| | 4 | responsibilities and duties when you were based out of Mexia |
| 09:54 | 5 | and North Zulch. |
| | 6 | A. Okay. I would get up and I would go and check my ACT or |
| | 7 | my LACT. I would drive from North Zulch to Hufsmith. And, |
| | 8 | in the mean -- in the meantime, I had stations which had |
| | 9 | LACT or ACT. So, I went by. I took the meter reading. |
| 09:55 | 10 | When there was time -- |
| | 11 | Q. Let me stop you for a second, Mr. Tratree. |
| | 12 | We have this map showing that Mexia is up |
| | 13 | here. And that's actually where you lived? |
| | 14 | A. Yes. |
| 09:55 | 15 | Q. How long have you lived in Mexia? |
| | 16 | A. Since I came to -- transferred up there. I can't |
| | 17 | remember. Approximately '98. |
| | 18 | Q. When the company transferred you there, you moved to |
| | 19 | Mexia? |
| 09:55 | 20 | A. Yes. |
| | 21 | Q. And you bought a house there? |
| | 22 | A. Yes, I did. |
| | 23 | Q. And you and your wife and your family have lived there |
| | 24 | during this time? |
| 09:55 | 25 | A. Yes. |

|       |    |                                                                         |
|-------|----|-------------------------------------------------------------------------|
|       | 1  | A.    -- like an explanation.                                           |
|       | 2  | Q.    And did you believe that you had the right under the              |
|       | 3  | contract to bump both -- Well, under the contract -- Have               |
|       | 4  | you ever reviewed the contract?                                         |
| 10:29 | 5  | A.    Yes, sir.                                                         |
|       | 6  | Q.    In what capacity?                                                 |
|       | 7  | A.    I knew the contract. I used to be a union steward. I              |
|       | 8  | knew the contract.                                                      |
|       | 9  | Q.    With regards to the contract that was in force at the             |
| 10:30 | 10 | time, did you have an understanding as to whether you could             |
|       | 11 | bump into only old classifications or old and new?                      |
|       | 12 | A.    Could you repeat that, please.                                    |
|       | 13 | Q.    Yes, sir.                                                         |
|       | 14 |       Let me direct your attention to Joint                             |
| 10:30 | 15 | Exhibit -- Mr. Tratree, let me show you a portion of Joint              |
|       | 16 | Exhibit 7 and see if you recognize this. Do you know what               |
|       | 17 | that is?                                                                |
|       | 18 | A.    Yes, sir. It's Article 10, "Demotion and Bumping".                |
|       | 19 | Q.    Is that part of the contract?                                     |
| 10:31 | 20 | A.    Yes, sir.                                                         |
|       | 21 | Q.    Okay. Can you read for us the first paragraph.                    |
|       | 22 | A.    It says: "Any employee whose assignment is discontinued           |
|       | 23 | or who is displaced by a senior employee shall at his or her            |
|       | 24 | option exercise his or her demotional rights for any job for            |
| 10:31 | 25 | which he or she is qualified within the new or old                      |

|  |  |
|---|---|
|  | 1    He said he was sent down to fire me by |
|  | 2  Mr. Gleason and Mr. Bowden and told me to get my things out |
|  | 3  of the truck, my personal things, and leave the phones and |
|  | 4  the computers and such at the office. |
| 10:43 | 5    And then he asked me if I had a way to get |
|  | 6  home, and I said, "No. But I'll call my wife." So, I |
|  | 7  called my wife and she come to pick me up. |
|  | 8  Q.  So, did you -- Did you -- You didn't accept a ride home? |
|  | 9  You got your wife to come pick you up? |
| 10:43. | 10 A.  Yes. |
|  | 11 Q.  Were you expecting to get fired when you went there that |
|  | 12 day? |
|  | 13 A.  Oh, no. Because I knew I had plenty of time with the |
|  | 14 second bump sheet because it counts as the first because |
| 10:43 | 15 there's some changes on there. |
|  | 16   Each time you get a bump sheet it's five days |
|  | 17 and, if there's something wrong and they send you another |
|  | 18 bump sheet, it's another five days because it deletes the |
|  | 19 first one. |
| 10:43 | 20 Q.  Okay. Mr. Tratree, let me show you Exhibit 6 -- Joint |
|  | 21 Exhibit 6. It's dated September 27th, 2001. It's an e-mail |
|  | 22 from Kelly Gleason to Mr. Hardwick. Is that what it looks |
|  | 23 like? |
|  | 24 A.  Yes, sir. |
| 10:44 | 25   MS. OATHOUT: Well, Your Honor, I think that's |

| | |
|---|---|
| 1 | annuities in the amount of $75,000. |
| 2 | A. I understand distribution is I sold some stock. Is this |
| 3 | what you're asking? |
| 4 | Q. Okay, sir. |
| 11:36  5 | A. Okay. I sold some stock. |
| 6 | Q. Okay. Exhibit 13, Page 16. And, again, sir, in the |
| 7 | Year 2005 you reported on your federal income tax return |
| 8 | that you had received pension and annuities in the amount of |
| 9 | $81,250. Isn't that correct? |
| 11:36  10 | A. So, I sold some more stock. |
| 11 | Q. Okay. In which you were a 100 percent vested in order |
| 12 | to sell or get that distribution. Correct? |
| 13 | A. I don't know. |
| 14 | Q. Mr. Tratree, did you purchase any type of insurance |
| 11:37  15 | after you left BP? |
| 16 | A. Not that I can think of. |
| 17 | Q. Okay. Did you get any type of insurance whatsoever? |
| 18 | A. No, I didn't. |
| 19 | Q. Do you have any proof of what the cost of any out-of- |
| 11:37  20 | pocket expenses might have been for you or any medical |
| 21 | coverage or other type of coverage you may have received |
| 22 | since you left BP? |
| 23 | MR. SOLTERO: Objection, Your Honor. May we |
| 24 | approach on this issue? |
| 11:37  25 | THE COURT: You may. |

|  |  |
|---|---|
| 1 | Q.  If you got a statement from Fidelity, Mr. Tratree, does |
| 2 | that refresh your recollection that Fidelity is the company |
| 3 | that handed your BP retirement plan? |
| 4 | A.  I know that.  Yes, ma'am. |
| 11:40  5 | Q.  Okay.  So, if there's a statement from Fidelity, it's |
| 6 | about your retirement plan, isn't it, sir? |
| 7 | A.  Or my stock plan. |
| 8 | Q.  Sir? |
| 9 | A.  Or my stock plan. |
| 11:40  10 | Q.  Okay.  Was your 401(K) with Fidelity as well? |
| 11 | A.  I don't know offhand. |
| 12 | Q.  Okay, sir.  Back to the cost of any insurance. |
| 13 | You have not incurred any out-of-pocket |
| 14 | expenses for any insurance, have you, sir? |
| 11:40  15 | A.  Yes, I have.  I'm sorry.  Repeat that.  I'm sorry. |
| 16 | Q.  I think you told me you haven't gotten any insurance. |
| 17 | Is that correct? |
| 18 | A.  Yes.  That's correct.  That's correct. |
| 19 | Q.  So, you haven't incurred any out-of-pocket expenses, |
| 11:40  20 | then, in getting insurance because you didn't get any? |
| 21 | A.  That's correct. |
| 22 | Q.  Okay.  And do you have any proof, sir, of any out-of- |
| 23 | pocket expenses whatsoever that you may have incurred for |
| 24 | things that were covered by insurance when you were with BP |
| 11:40  25 | but that were not later covered? |

1        MR. FOSS: We'll have that to you.

2        THE COURT: All right. Great. Thank you very

3   much.

4

5                    COURT REPORTER'S CERTIFICATE

6        I, BRUCE SLAVIN, certify that the foregoing is a

7   correct transcript from the record of proceedings in the

8   above-entitled matter, to the best of my ability.

11                                  _____

                                        BRUCE SLAVIN, RPR, CM